■ Maria T. Steuhl, Formerly Known as Maria T. Brailey, et al., Respondents-Appellants, v Home Therapy Equipment, Inc., Respondent, and Invacare Corporation, Appellant-Respondent. [857 NYS2d 335]—

Kane, J. Cross appeals from an order of the Supreme Court (Donohue, J.), entered August 16, 2007 in Columbia County, which, among other things, denied defendant Invacare Corpora-

tion's motion for summary judgment dismissing the complaint against it.

Plaintiff Maria T. Steuhl (hereinafter plaintiff) was prescribed a motorized hospital bed after she underwent back surgery. The bed was manufactured by defendant Invacare Corporation and was owned and leased by defendant Home Therapy Equipment, Inc. Home Therapy's service technician, Louis Olivetto, delivered the bed to plaintiff's home, assembled it there and instructed plaintiff's sister on how to properly operate it. Plaintiff used the bed without incident for four days. As plaintiff described the accident, while she was attempting to lower the head of the bed, the motor kept running but the bed stopped moving. She released the button and pressed it again, heard a crunching noise, then the head of the bed suddenly dropped flat, causing plaintiff serious injuries.

Plaintiff's sister contacted Home Therapy to inform it that the bed had malfunctioned. When Olivetto arrived at plaintiff's house to resolve the problem, he tested the bed by raising and lowering the head and found that the hand control was working only intermittently. In response, he replaced the foot spring, which included the bed's motors, and the control box. Thereafter, plaintiff used the bed for six months without incident.

As a result of her injuries, plaintiff and her husband, derivatively, commenced this action alleging negligence against Home Therapy and strict products liability, breach of warranty, and negligent design, manufacture and distribution against Invacare. Defendants filed cross claims against one another. Following discovery, Invacare moved for summary judgment dismissing the complaint against it.* Plaintiffs cross-moved for summary judgment on the issue of liability. Home Therapy cross-moved for summary judgment. Invacare further moved for summary judgment on its cross claim seeking indemnification and defense from Home Therapy. Supreme Court denied all of the motions, prompting these appeals by Invacare and plaintiffs.

On the strict products liability cause of action, Invacare was entitled to summary judgment dismissing the portions alleging a manufacturing defect and failure to warn. Under strict liability law, "a product may be defective by reason of a manufacturing flaw, improper design or failure to warn" (*Sukljian v Ross & Son Co.*, 69 NY2d 89, 94 [1986]; *see Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 106-107 [1983]). There is no proof of a manufacturing flaw here; the hospital bed was

---

* This Court previously affirmed Supreme Court's denial of Invacare's motion to strike Home Therapy's answer and cross claim based upon allegations of spoliation of evidence (23 AD3d 825 [2005]).

constructed according to Invacare's specifications and design (*see McArdle v Navistar Intl. Corp.*, 293 AD2d 931, 932 [2002]; *Van Deusen v Norton Co.*, 204 AD2d 867, 868 [1994]).

While manufacturers have a duty to warn against latent dangers due to intended uses and foreseeable unintended uses of their products (*see Liriano v Hobart Corp.*, 92 NY2d 232, 237 [1998]), courts may decide that there is no duty to warn or that such duty has been discharged under the "knowledgeable user exception" (*Travelers Ins. Co. v Federal Pac. Elec. Co.*, 211 AD2d 40, 43 [1995], *lv denied* 86 NY2d 712 [1995]). Where the person who would benefit from a warning is already aware of the specific hazard, the manufacturer cannot be held liable for failing to warn of that known hazard (*see Lombard v Centrico, Inc.*, 161 AD2d 1071, 1072 [1990]). Plaintiffs contend, with support from an expert engineer, that a warning was necessary to make sure that the hitch pin was inserted into the clevis pin, ensuring that the head of the bed remained attached to the rest of the frame. Invacare showed that its beds are not sold directly to end users, but to dealers who rely on trained technicians to assemble the beds. Olivetto testified at his deposition that he received training on assembling Invacare beds, had been assembling them for five years and was aware that installing the clevis pin and hitch pin was important because failing to ensure proper installation of these parts could cause the bed to fall apart. He was thus aware of the specific danger at issue here, so that any failure to warn did not proximately cause plaintiff's injury. Plaintiffs further assert that Invacare should have warned end users such as plaintiff. The warning sticker recommended by plaintiffs' expert would have been placed on the under side of the bed, rendering it unlikely that users would ever see it. Additionally, plaintiffs' expert opined that the purpose of such stickers would be to warn and remind technicians of the proper assembly method, not to warn users of the bed. Thus, Invacare established its entitlement to summary judgment on the portion of plaintiffs' complaint alleging a failure to warn.

The third way to establish strict products liability is through a design defect. A prima facie case of strict products liability for a design defect requires proof that the manufacturer "marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d at 107; *see Warnke v Warner-Lambert Co.*, 21 AD3d 654, 655 [2005]). The "standard for determining the existence of a design defect [requires] an assessment of whether 'if the design defect

were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner' " (*Denny v Ford Motor Co.*, 87 NY2d 248, 257 [1995], quoting *Voss v Black & Decker Mfg. Co.*, 59 NY2d at 108). Under this risk/utility balancing concept, juries determine the reasonableness of the manufacturer's choice to market the product with the selected design by weighing the risks of using the product against its usefulness and costs, as well as against the risks, usefulness and costs of any alternative designs (*see* PJI 2:120; *see also Denny v Ford Motor Co.*, 87 NY2d at 258; Blacklocks, Outside Counsel, *New Design-Defect Jury Instructions: Catching "Denny,"* NYLJ, Apr. 3, 2008, at 4, col 4).

Here, Invacare established its prima facie entitlement to summary judgment through its expert mechanical engineer's affidavit affirming that there was no defect in the design chosen by Invacare and the bed was reasonably safe for its intended use. In response, plaintiffs' expert asserted that the clevis pin and hitch pin design created a danger of improper installation which could result in the bed collapsing. He also stated that several alternative designs were safer, those alternatives were economically and technologically feasible, and the collapse of a bed as alleged by plaintiff would have been prevented by using an alternative to the clevis pin design. Both experts asserted that the collapse of the bed was caused by assembly error, namely that the assembler failed to install or improperly installed the clevis pin and hitch pin. Considering the conflicting expert opinions concerning the reasonableness of the bed's design, Supreme Court properly determined that a question of fact exists concerning an alleged design defect (*see Wojcik v Empire Forklift, Inc.*, 14 AD3d 63, 65 [2004]).

Supreme Court properly denied plaintiffs' motion for partial summary judgment against Home Therapy on the negligence cause of action. Both plaintiffs' and Invacare's experts opined that the cause of the accident was improper assembly of the bed due to improper installation of the clevis pin and hitch pin. These expert opinions—based upon a review of deposition transcripts, documents produced by the parties and examinations of the bed components—were sufficient to shift the burden to Home Therapy to establish a triable question of fact (*see Cusano v General Elec. Co.*, 111 AD2d 557, 558 [1985], *affd* 66 NY2d 844 [1985]). On the other hand, Olivetto testified at his deposition that he properly assembled the bed, including properly installing the clevis pin. He successfully tested the bed after assembling it. When he returned to repair the bed, he also

operated the motor to raise the head of the bed, though it only worked intermittently. Home Therapy's expert stated that the accident could not have been caused as claimed by plaintiff and the other experts since the head of the bed could not have been raised after plaintiff's accident if the clevis pin and hitch pin had become dislodged. While plaintiff's sister clarified her deposition testimony through an affidavit, even with that clarification she acknowledged that she saw Olivetto operate the bed after the accident but before he repaired it. This corroborated Olivetto's testimony. Considering the expert proof that the only possible cause was improper assembly, contradicted by factual testimony directly and impliedly establishing that the bed was properly assembled, as well as expert testimony supporting that factual proof, summary judgment was properly denied on plaintiffs' negligence cause of action against Home Therapy (*see Nichols v Agway, Inc.*, 280 AD2d 889, 890 [2001]; *see also Torres v W.J. Woodward Constr., Inc.*, 32 AD3d 847, 849 [2006]).

Invacare was not entitled to summary judgment on its cross claim against Home Therapy. Under the contract between defendants, Home Therapy "agree[d] to indemnify and hold harmless Invacare from any and all claims, losses, damages, charges, expenses . . . which may be made against Invacare or which Invacare may incur *arising out of any negligent actions of [Home Therapy]*" (emphasis added). Contracts must be strictly construed by looking to the language employed by the parties to give effect to the their intended purpose (*see McCleary v City of Glens Falls*, 32 AD3d 605, 609 [2006]). The contract calls for indemnification for losses and damages resulting from Home Therapy's negligent actions, rendering summary judgment premature here because there has not been any finding of negligence against Home Therapy (*see Rodriguez v Savoy Boro Park Assoc. Ltd. Partnership*, 304 AD2d 738, 739 [2003]; *Taylor v Bande Real Estate Corp.*, 278 AD2d 404, 404-405 [2000]; *Cichon v Brista Estates Assoc.*, 193 AD2d 926, 927-928 [1993]; *compare Edwards v International Bus. Machs. Corp.*, 174 AD2d 863, 865 [1991]). For Home Therapy, which is not an insurer, its duty to defend is no broader than its duty to indemnify (*see Brasch v Yonkers Constr. Co.*, 306 AD2d 508, 510-511 [2003]; *Cannavale v County of Westchester*, 158 AD2d 645, 646 [1990]; *see also McCleary v City of Glens Falls*, 32 AD3d at 609). Hence, Supreme Court properly denied Invacare's motion for summary judgment on its cross claim seeking indemnification and defense.

Mercure, J.P., Peters, Kavanagh and Stein, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant Invacare

Corporation's motion for summary judgment dismissing those causes of action alleging strict products liability based on defective manufacturing and failure to warn; motion granted to that extent and said claims dismissed against said defendant; and, as so modified, affirmed.